**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

GEORGE L. MILLER, Chapter 7 Trustee for
Education Management Corporation, *et al.*,

Plaintiff,

v.

KKR & CO. INC., *et al.*,

Defendants.

Case No. 2:25-cv-00311-JS

**DEFENDANTS' OPPOSITION TO THE TRUSTEE'S MOTION FOR
<u>MANDATORY ABSTENTION</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND ................................................................................................2

    A.    The Pending Bankruptcy Cases ................................................. 2

    B.    The Trustee's Pending Adversary Proceeding in the Bankruptcy Court ................................................................................................. 4

    C.    The Trustee Files This Action in State Court ........................... 5

ARGUMENT ....................................................................................................7

    I.    The Trustee Has Not Shown the Absence of Alternative Grounds for Federal Jurisdiction. ...................................................................... 8

    II.    The Trustee Has Not Shown the Action Can Be "Timely Adjudicated." ............. 12

CONCLUSION ................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Americold Realty Tr. v. Conagra Foods, Inc.*,
  577 U.S. 378 (2016)..................................................................................................8

*Baron v. Pritzker*,
  52 Pa. D. & C. 4th 14, 2001 WL 1855054 (Pa. Com. Pl. 2001)............................10

*In re Big Daddy Guns, Inc.*,
  651 B.R. 817 (Bankr. N.D. Fla. 2023) ...................................................................9

*In re Briscoe*,
  448 F.3d 201 (3d Cir. 2006)....................................................................................9

*Burnside* v. *Abbott Lab'ys*,
  505 A.2d 973 (Pa. Super. Ct. 1985)......................................................................12

*In re Carriage House Condos. L.P.*,
  415 B.R. 133 (E.D. Pa. 2009) .........................................................................13, 15

*Dunn v. Patriarch Partners (In re Zohar III Corp.*),
  20-AP-50534, 2024 WL 1015112 (D. Del. Mar. 8, 2024)....................................15

*In re Franchise Servs. of N. Am., Inc.*,
  891 F.3d 198 (5th Cir. 2018) .................................................................................10

*In re GenOn Mid-Atl. Dev., LLC*,
  42 F.4th 523 (5th Cir. 2022) ..................................................................................9

*In re Glob. Crossing, Ltd. Sec. Litig.*,
  311 B.R. 345 (S.D.N.Y. 2003)..........................................................................13, 14

*Hannah* v. *Johnson & Johnson Inc.*,
  No. 18-CV-1422, 2020 WL 3497010 (D.N.J. June 29, 2020)...............................11

*Kahn v. Lynch Comm. Sys., Inc.*,
  638 A.2d 1110 (Del. 1994) ....................................................................................10

*Keystone Sports & Ent. LLC* v. *Fed. Ins. Co.*,
  No. 21-CV-609, 2021 WL 5789021 (E.D. Pa. Dec. 7, 2021).................................9

*Kirschner v. Grant Thornton LLP (In re Refco, Inc. Sec. Litig.)*,
  628 F. Supp. 2d 432 (S.D.N.Y. 2008)....................................................................14

*Miller* v. *Nelson (In re The Art Inst. of Phila.)*,
No. 20-AP-50627 (Bankr. D. Del.) .................................................................3, 6

*Moore v. Johnson & Johnson*,
907 F. Supp. 2d 646 (E.D. Pa. 2012) ...................................................................12

*In re Morton's Rest. Grp., Inc. S'holders Litig.*,
74 A.3d 656 (Del. Ch. 2013) ................................................................................11

*Parmalat Cap. Fin. Ltd.* v. *Bank of Am. Corp.*,
639 F.3d 572 (2d Cir. 2011) .........................................................................13, 14

*In re PMTS Liquidating Corp.*,
526 B.R. 536 (D. Del. 2014) .................................................................................10

*Commonwealth* v. *RBC Cap. Markets Corp.*,
264 A.3d 825, 2021 WL 4096634 (Pa. Commw. Ct. 2021) ...................................11

*Reeser v. NGK Metals Corp.*,
247 F. Supp. 2d 626 (E.D. Pa. 2003) ...................................................................12

*Samson* v. *Allis-Chalmers Prods. Liab. Tr.*,
No. 90-CV-139, 1990 WL 87394 (E.D. Pa. June 21, 1990) ....................................8

*In re Semcrude, LP*,
442 B.R. 258 (Bankr. D. Del. 2010) .....................................................................14

*Stoe v. Flaherty*,
436 F.3d 209 (3d Cir. 2006).............................................................................8, 13

*In re Total Containment, Inc.*,
335 B.R. 589 (Bankr. E.D. Pa. 2005) ...................................................................10

*Trs. of Masonic Hall & Asylum Fund v. Pricewaterhousecoopers LLP*,
No. 08-CV-10494, 2009 WL 290543 (S.D.N.Y. Feb. 6, 2009).............................14

**Statutes**

11 U.S.C. § 704(a) ...................................................................................................3

28 U.S.C. § 1332.............................................................................................2, 8, 9

28 U.S.C. § 1334.....................................................................................................2

28 U.S.C. § 1334(a)(2).............................................................................................8

28 U.S.C. § 1334(c)(2).............................................................................................7

**Other Authorities**

U.S. Trs. Prog., U.S. Dep't of Justice, List of Chapter 7 Panel Trustees,
     https://www.justice.gov/ust/private-trustee-locator ................................................................9

## PRELIMINARY STATEMENT

This is a case that should have been brought in—and that should be transferred to—the U.S. Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). Plaintiff George L. Miller was appointed trustee in the Chapter 7 bankruptcy cases of Education Management Corporation ("EDMC") and certain affiliated debtors (the "Chapter 7 Cases"), and he seeks to recover in this action on behalf of EDMC's estate. Yet the Trustee filed this action not in the Bankruptcy Court—which has overseen the Chapter 7 Cases since June 2018—but in the Court of Common Pleas of Philadelphia County. He did so despite having brought an adversary proceeding in the Bankruptcy Court more than four years ago that, on his own telling, involves similar claims relating to the sale of EDMC as those asserted in the Complaint. Even though the Bankruptcy Court already has significant experience and familiarity with the underlying facts, the Trustee now seeks to have these similar claims adjudicated in parallel by two different courts. The Trustee's forum-shopping is easily explained: Disappointed with the Bankruptcy Court's rulings in his existing action (certain of which would counsel in favor of dismissing this Complaint ), the Trustee now seeks to evade those rulings, thereby multiplying proceedings, inviting inconsistent judgments from different courts, and prolonging the administration of the Chapter 7 Cases.

For the reasons set forth in Defendants'[1] motion to transfer, this Court should transfer this action to the District of Delaware, so that it may be referred to the Bankruptcy Court, which is best situated to resolve the Trustee's abstention motion. Although the Trustee has sought to avoid its jurisdiction, the Bankruptcy Court—which is most familiar with its own docket and how the

---

[1] The moving Defendants are KKR & Co. Inc., KKR Credit Advisors (US) LLC, KKR Financial Holdings III, LLC, KKR Strategic Capital Institutional Fund, Ltd., KKR-Milton Capital Partners L.P., KKR-PBPR Capital Partners L.P., KKR Debt Investors II (2006) (Ireland) L.P., KKR Lending Partners L.P., FS KKR Capital Corp., 8 Capital Partners L.P., BCBSM, Inc., Spruce Investors Limited, Kermit Cook, and Oregon Public Employees Retirement Fund.

Trustee's pursuit of similar claims in multiple jurisdictions would delay and complicate the resolution of the Chapter 7 Cases and adversary proceeding—should resolve the Trustee's motion.

Even absent a transfer, however, mandatory abstention has no application here, for two basic reasons. *First*, the Trustee cannot show, as he must, that there is no basis for federal jurisdiction other than under 28 U.S.C. § 1334. While the Trustee does not contest that federal jurisdiction exists under § 1334 because this action "relates to" a bankruptcy case, the Complaint, properly construed, demonstrates that there also is federal diversity jurisdiction under 28 U.S.C. § 1332. The *only* defendant that could conceivably defeat diversity jurisdiction is defendant FS KKR Capital Corp. ("FS KKR"), which, according to the Complaint's allegations, shares the Trustee's Pennsylvania citizenship. But there is no colorable ground or reasonable basis for the Trustee's claims against FS KKR. The Complaint contains *no* specific allegations against FS KKR, and the Complaint itself establishes that FS KKR owed no fiduciary duties to EDMC. *Second*, the Trustee fails to show that his action could be timely adjudicated in state court because duplicative state and bankruptcy-court proceedings would inject inefficiency and delay, risk generating conflicting rulings, squander judicial resources, and inevitably interfere with the efficient administration of the bankruptcy cases.

If the Court rules on the Trustee's motion, that motion should be denied.

## BACKGROUND

### A.  The Pending Bankruptcy Cases

This case relates to the bankruptcy cases of EDMC, formerly the operator of several for-profit colleges and universities, including Argosy University, The Art Institutes, Brown Mackie College, and South University. Nearly seven years ago, in June 2018, EDMC, along with certain affiliated debtors, filed voluntary Chapter 7 petitions in the Bankruptcy Court. Now, the Trustee seeks to litigate outside of the Bankruptcy Court through the current Action, which alleges various

claims against former EDMC directors or investors, stemming from the October 2017 sale to the nonprofit Dream Center Foundation ("DCF") of substantially all assets of EDMC.  Compl. ¶¶ 2, 175.  The Trustee filed the Action in Pennsylvania state court, despite federal jurisdiction, and despite the fact that the Bankruptcy Court has for years overseen the underlying Chapter 7 Cases, along with a similar, pending litigation brought by the Trustee in 2020.

Starting with his appointment in 2018, the Trustee has investigated—under the auspices of the Bankruptcy Court—the financial affairs of and potential claims belonging to the Chapter 7 debtors.  Indeed, under the Bankruptcy Code, the Trustee must "investigate the financial affairs of the debtor."  11 U.S.C. § 704(a).  The Trustee's investigation focused from the outset on supposed claims against EDMC's former directors and officers, as well as potential claims arising out of the 2017 sale of EDMC that, as discussed below, the Trustee now seeks to litigate in two different forums.  For example, within months of the bankruptcy filing, the Trustee's counsel was devoting time to "the review of potential litigation matters," including "transactions with the former officers and directors" and the "sale of a subsidiary operation."  Ex. A at 2.

The Trustee sought—and obtained—permission from the Bankruptcy Court to pursue information from third parties in connection with these efforts.  In January 2020, for example, the Trustee sought authorization from the Bankruptcy Court to subpoena documents from DCF, among others.  Ex. B.  The Trustee told the Bankruptcy Court that the information he sought was "necessary for the Trustee to investigate the prepetition actions taken by the management and boards of directors … of the Debtors" and to "evaluate whether the Debtors' estates have viable causes of action related to the prepetition sale of all of its assets [to DCF] and related activities that preceded and precipitated the Debtors' eventual bankruptcy filings."  *Id.* at 2, 8.  The Bankruptcy Court authorized a subpoena to DCF in February 2020.

**B.  The Trustee's Pending Adversary Proceeding in the Bankruptcy Court**

In connection with the Trustee's investigation in the Chapter 7 Cases, the Trustee filed an adversary proceeding in June 2020 against 11 former officers and directors of EDMC and affiliated entities.  *See Miller* v. *Nelson (In re The Art Inst. of Phila.)*, No. 20-AP-50627 (Bankr. D. Del.) (the "Adversary Proceeding").  In his original complaint, the Trustee asserted 10 causes of action against the Adversary Proceeding defendants, including breach of fiduciary duty, fraud, and civil conspiracy.  The Trustee alleged, among other things, that the Adversary Proceeding defendants mismanaged EDMC and paid excessive bonuses to certain EDMC officers and directors.

The Trustee has repeatedly represented to the Bankruptcy Court that the claims asserted in the Adversary Proceeding encompass those alleged in the Complaint.  The principal theories set forth in the Complaint are that Defendants allegedly violated their fiduciary duties, aided or abetted fiduciary breaches, or engaged in a conspiracy to (i) facilitate the sale of EDMC's assets to DCF for insufficient consideration; and (ii) cause EDMC to pay excessive bonuses to certain officers and directors.  According to the Trustee, these "sale-related allegations" already are pending before the Bankruptcy Court as part of the Adversary Proceeding.  The Trustee has taken the position before the Bankruptcy Court that:

- "[T]he sale-related allegations are within the scope of the [Second Amended Complaint]" in the Adversary Proceeding, Ex. C at 2;

- His pursuit of the "sale-related allegations" against the Adversary Proceeding defendants does not involve "new claims" and those allegations encompassed by his "existing claims in the [Second Amended Complaint]," *id.*;

- The "sale-related allegations … merely restate the existing claims" in the Adversary Proceeding, Ex. D at 2; and

- The "allegations of the [Second Amended Complaint] encompass and place [the Adversary Proceeding] Defendants on fair notice that the wind down and sale of the Debtors' businesses, along with the bonuses paid to Defendants in connection therewith, are within the scope of the Trustee's claims," *id.*

The advanced proceedings before the Bankruptcy Court in the Adversary Proceeding underscore why the Trustee sought to pursue this Action in state court despite concurrently pursuing litigation before the Bankruptcy Court that he contends encompasses similar claims. More than three years ago, in January 2022, after considering more than 340 pages of briefing and oral argument, the Bankruptcy Court issued a 45-page opinion on the Adversary Proceeding defendants' motion to dismiss. Although the Bankruptcy Court permitted certain of the Trustee's claims to proceed, as relevant here, the Bankruptcy Court dismissed as time barred the Trustee's fiduciary duty claims against defendants who served as officers or directors prior to the applicable two-year limitations period under Pennsylvania law and three-year limitations period under Delaware law. Ex. E at 16–17. In doing so, the Bankruptcy Court rejected the Trustee's argument—repeated in the Complaint here (*see* ¶¶ 203–22)—that the statutes of limitations should be tolled under the discovery rule or other equitable doctrines. Ex. E at 24–26.

It is no surprise that, in filing this Action, the Trustee seeks to avoid the Bankruptcy Court. The claims he seeks to pursue, as discussed below, involve a sale that closed ***more than six years ago***—outside of any conceivable limitations period. Moreover, the Bankruptcy Court, unlike the state court, has overseen—and accordingly is familiar with—the Trustee's own pattern of delay and inaction that resulted in the filing of the Complaint years after any applicable limitations periods expired. As discussed above, despite starting his investigation in 2018 and subpoenaing records from DCF in 2020, the Trustee waited years before suing the Defendants in this Action.

### C. The Trustee Files This Action in State Court

The Trustee filed the Complaint in the Court of Common Pleas of Philadelphia County. The Complaint sets forth three causes of action—breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and civil conspiracy—arising out of the same basic allegations.

The Complaint alleges that, starting in 2015, EDMC undertook a process to sell its assets.

Compl. ¶¶ 111–12.  EDMC sold all or substantially all its assets to DCF, in a transaction that closed in October 2017.  Compl. ¶¶ 2, 175.  The Complaint alleges that the sale to DCF occurred on "inferior" terms and that the defendants supposedly "torpedoed" more attractive offers from other bidders.  Compl. ¶¶ 6, 176.  According to the Complaint, those supposedly more attractive offers sought to acquire only the best-performing schools operated by EDMC.  Compl. ¶¶ 181, 183.  Because these other offers supposedly contemplated the acquisition of some (but not all) schools operated by EDMC, the Complaint alleges that they were rejected because of "conflicted considerations."  Compl. ¶¶ 129–30.  According to the Complaint, these involved concerns that by leaving underperforming school systems behind with EDMC, a partial sale of EDMC's assets would expose EDMC's directors and officers to residual liability risk and allegedly endanger other education-sector investments held by certain Defendants or their affiliates.  *See, e.g.*, Compl. ¶¶ 124, 129.  In addition, the Complaint alleges that EDMC paid "millions of dollars" in supposedly improper bonuses to its officers and directors.  Compl. ¶¶ 195–200.

As discussed above, the Trustee already claims to be pursuing the "sale-related allegations" before the Bankruptcy Court.  In fact, the Trustee has simply copied and pasted allegations from his operative complaint in the Adversary Proceeding into the Complaint in this Action.  *Compare* Compl. ¶ 195 (alleging EDMC executives "lined their pockets and looted the Company of millions of dollars") *with* Second Am. Compl. ¶ 135, ECF No. 132, *Miller* v. *Nelson (In re The Art Inst. of Phila.)*, No. 20-AP-50627 (Bankr. D. Del. Sept. 22, 2022) (alleging "certain Defendants lined their pockets and looted the Company of millions of dollars").

While the Trustee in the Adversary Proceeding asserted claims against some different defendants, the Complaint here asserts claims against 25 others.  The Complaint alleges that one defendant, Kermit Cook, served as a director of EDMC from January 15, 2015 to January 13, 2017.

Compl. ¶¶ 96, 143. The other defendants include 21 funds or investment vehicles that the Complaint alleges held shares in or debt issued by EDMC (the "Investment Fund Defendants"). Compl. ¶ 39. These Investment Funds were allegedly "managed" or "controlled" by defendants KKR & Co. Inc, KKR & Co. LLP, and KKR Credit Advisors (US) LLC (the "KKR Defendants" and, together with the Investment Fund Defendants, the "Entity Defendants"). Compl. ¶ 40. The Complaint nowhere identifies any conduct (or inaction) attributable *any* specific Investment Fund Defendant or KKR Defendant. For example, the Complaint only mentions any Investment Fund or KKR Defendant by name in the paragraphs identifying them as defendants and setting out their places of business. *See* Compl. ¶¶ 18–39. The few remaining allegations about the Entity Defendants are buried in impermissible group pleading. *See, e.g.*, Compl. ¶¶ 96, 106, 236.

The Complaint establishes, however, that none of the Investment Fund Defendants or KKR Defendants controlled EDMC, either individually or collectively. According to the Complaint, those defendants did not appoint or control a majority of EDMC's board of directors. The Complaint alleges that the Entity Defendants "appointed two new EDMC directors as of January 15, 2015," Mark McEachen and defendant Kermit Cook. *See* Compl. ¶ 96. The Complaint's allegation that the Entity Defendants appointed Mr. McEachen to the EDMC board is simply false. But even if the Entity Defendants had the authority to appoint two directors, the Complaint acknowledges that, at all relevant times, the EDMC board was comprised of at least five directors. *See* Compl. ¶¶ 101–104. Nor did the Entity Defendants own a controlling interest: the Trustee admits the Investment Fund Defendants together held 12.4% of EDMC's stock. Compl. ¶ 105.

## ARGUMENT

While the Moving Defendants respectfully submit that the Action should first be transferred to the Bankruptcy Court to permit that court to resolve the Trustee's motion, the Trustee's motion should be denied in all events.

The *sole* basis on which the Trustee seeks remand is through the application of mandatory abstention under 28 U.S.C. § 1334(c)(2).  To establish entitlement to mandatory abstention, the Trustee bears the burden to prove each of the five requirements under 28 U.S.C. § 1334(c)(2):

> (1) the proceeding is based on a state law claim or cause of action; (2) the claim or cause of action is 'related to' a case under title 11, but does not 'arise under' title 11 and does not 'arise in' a case under title 11, (3) federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case; (4) an action 'is commenced' in a state forum of appropriate jurisdiction; and (5) the action can be 'timely adjudicated' in a state forum of appropriate jurisdiction.

*Stoe* v. *Flaherty*, 436 F.3d 209, 213, 219 n.5 (3d Cir. 2006) (citing 28 U.S.C. § 1334(c)(2)).

The Trustee has failed to prove his entitlement to mandatory abstention under either the third or fifth requirement.  As addressed below, the Trustee has failed to show that there is no basis for federal jurisdiction apart from the Action's relation to a bankruptcy case.  Here, there is diversity jurisdiction because, as the Complaint establishes, there is no colorable ground supporting the Trustee's claims against any non-diverse defendant.  In addition, the Trustee fails to prove that this Action could be timely adjudicated in a state forum where, as here, proceeding with duplicative claims in state court would unnecessarily prolong the Chapter 7 Cases while multiplying proceedings and injecting the risk of inconsistent results.

## I.    The Trustee Has Not Shown the Absence of Alternative Grounds for Federal Jurisdiction.

Mandatory abstention is unavailable because the Trustee cannot show that this Action's relation to a bankruptcy case is the sole basis for this Court's jurisdiction.

The Complaint here alleges that only one defendant is a citizen of Pennsylvania and could thus defeat diversity under 28 U.S.C. § 1332 in light of the Trustee's apparent Pennsylvania citizenship:  FS KKR.  Because the Trustee "file[d] a lawsuit … in [his] own name, [his] citizenship is all that matters for jurisdictional purposes."  *Americold Realty Tr.* v. *Conagra Foods,*

*Inc.*, 577 U.S. 378, 383 (2016); *Samson* v. *Allis-Chalmers Prods. Liab. Tr.*, No. 90-CV-139, 1990 WL 87394, at *2 (E.D. Pa. June 21, 1990) (applying the same rule). The Trustee fails specifically to identify his citizenship in either the Complaint or his motion. That alone is grounds to deny the Motion where, as here, it is the Trustee's burden to prove the lack of alternative jurisdiction.[2] *See In re Big Daddy Guns, Inc.*, 651 B.R. 817, 827 (Bankr. N.D. Fla. 2023) (denying motion to abstain where, in view of incomplete record, "diversity jurisdiction *may have* existed" and movant thus failed to meet its burden). Even assuming, as appears to be the case, that the Trustee is a citizen of Pennsylvania,[3] the improper joinder of FS KKR precludes the Trustee from satisfying his burden to show the absence of alternative federal jurisdiction.

In determining whether complete diversity exists, federal courts disregard nondiverse parties that were improperly or "'fraudulently' named or joined solely for the purpose of defeating diversity jurisdiction." *In re Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006). Improper joinder does not require "a demonstration of outright fraud or bad faith." *Keystone Sports & Ent. LLC* v. *Fed. Ins. Co.*, No. 21-CV-609, 2021 WL 5789021, at *2 (E.D. Pa. Dec. 7, 2021). Instead, a defendant is fraudulently joined—and therefore disregarded in assessing diversity—where "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant," *Briscoe*, 448 F.3d at 216 (quotation marks omitted). Here, the Complaint fails to plead any colorable claim against FS KKR. While Defendants address below the improper joinder of FS

---

[2] The Trustee's observation that removal of this case to federal court was "premised solely on a 'related to' bankruptcy relationship under § 1334(b)" (ECF No. 19 at 5) makes no difference. Mandatory abstention does not apply where there is any additional basis for federal jurisdiction, regardless of whether the state-court action was removed on that basis. *See In re GenOn Mid-Atl. Dev., LLC*, 42 F.4th 523, 541 (5th Cir. 2022) (defendants not required "to address abstention in [their] removal notice before [the Trustee] asked for it").

[3] *See* U.S. Trs. Prog., U.S. Dep't of Justice, List of Chapter 7 Panel Trustees, https://www.justice.gov/ust/private-trustee-locator (last accessed Feb. 7, 2025) (noting that the Trustee's office is in Philadelphia, Pennsylvania).

KKR because it is the only defendant alleged by the Trustee to be citizen of Pennsylvania, the arguments below apply equally to each of the other Investment Fund Defendants, none of which are properly joined and the citizenship of which should be disregarded for diversity purposes.

**The Complaint Fails to Allege a Colorable Fiduciary Duty Claim Against FS KKR.** The Complaint not only fails to include any allegations setting out a fiduciary relationship between FS KKR and EDMC, but utterly refutes any fiduciary obligations on the part of FS KKR. The *only* relationships between FS KKR and EDMC alleged in the Complaint are that: (i) FS KKR held EDMC equity or debt (though the Complaint fails to specify whether FS KKR was a shareholder, lender, or both), *see* Compl. ¶ 39; and (ii) FS KKR, along with 20 other Investment Fund Defendants, appointed a minority of EDMC's board members, *see id.* ¶¶ 5, 39, 96, 136.

No fiduciary obligations attach to mere shareholders in a corporation, and the Complaint itself disproves any theory that FS KKR was a controlling shareholder of EDMC. A shareholder owes fiduciary duties to a corporation only if it "owns a majority interest in or exercises control over the business affairs of the corporation." *Kahn* v. *Lynch Comm. Sys., Inc.*, 638 A.2d 1110, 1113 (Del. 1994); *In re Total Containment, Inc.*, 335 B.R. 589, 603 (Bankr. E.D. Pa. 2005). "Control" can be established where the shareholder owns more than or close to 50% of the company or where a majority of the entity's directors are controlled by or interested in the shareholder. *See In re Franchise Servs. of N. Am., Inc.*, 891 F.3d 198, 211–12 (5th Cir. 2018) (finding no control by shareholder which appointed two of five directors and held preferred stock convertible to 49.76% ownership); *In re PMTS Liquidating Corp.*, 526 B.R. 536, 543 (D. Del. 2014) (29% shareholder which "was entitled to appoint two designees to the Board" was not a controlling shareholder); *Baron* v. *Pritzker*, 52 Pa. D. & C. 4th 14, 2001 WL 1855054, at *6 (Pa. Com. Pl. 2001) (minority shareholder does not owe fiduciary duty to other shareholders).

The Complaint, however, establishes FS KKR's *absence* of control over EDMC.  It not only fails to allege any specific ownership of EDMC (or any actual conduct) by FS KKR, but affirmatively alleges that all the Investment Fund Defendants *together* held only 12.4% of EDMC's stock—a far cry from a controlling majority interest.  Compl. ¶ 105.  The Complaint further disproves any control by FS KKR in conceding that the EDMC board of directors was not controlled by FS KKR individually, or the Defendants collectively.  It alleges that the Investment Fund Defendants appointed only two directors to EDMC's five-member board.  *See id.* ¶ 105.  Even though the Trustee incorrectly alleges that the Entity Defendants appointed Mr. McEachen (they did not), the absence of majority control of the board further establishes the absence of any basis for the notion that FS KKR was a controlling shareholder.  *See In re Morton's Rest. Grp., Inc. S'holders Litig.*, 74 A.3d 656, 664–65 (Del. Ch. 2013) (allegations that defendant owned a "27.7% stake" and had "two employees on [a 10-person] board" fell "far short" of plaintiffs' burden to support "a reasonable inference that [defendant] was a controlling stockholder").

**The Complaint Fails to Allege a Colorable Aiding and Abetting Claim Against FS KKR**.  The Complaint further fails to offer *a single* allegation tying FS KKR to even the basic elements of an aiding and abetting claim.  The Complaint nowhere alleges that FS KKR *knew* of a fiduciary breach by any officer or director of EDMC, let alone that it offered "substantial assistance or encouragement … in effecting that breach."  *Commonwealth* v. *RBC Cap. Markets Corp.*, 264 A.3d 825 (TABLE), 2021 WL 4096634, at *24 (Pa. Commw. Ct. 2021).  It only mentions FS KKR specifically when identifying the defendants.  *See* Compl. ¶¶ 18, 39.  Indeed, it does not identify a single employee, officer, or director of FS KKR who even could have known of an alleged fiduciary breach by others or substantially assisted or encouraged such a breach.  "[T]here is no better admission of fraudulent joinder than the failure … to set forth any specific factual

11

allegations" against a defendant.  *Hannah* v. *Johnson & Johnson Inc.*, No. 18-CV-1422, 2020 WL 3497010, at *14 (D.N.J. June 29, 2020) (quotation marks omitted).  No such allegations exist here.

The Trustee's failure to make out a colorable claim against FS KKR is particularly inexcusable in this case.  The Complaint acknowledges that the Trustee obtained "virtually all" of EDMC "documents and computer servers" existing at the time of the October 2017 sale— "potentially a petabyte (1,000 terabytes) of electronic data," Compl. ¶ 204—as well as "more than 33 million documents" produced in earlier EDMC litigation, Compl. ¶¶ 212-13.  Despite having access to an extraordinary amount of data and information, the Trustee was apparently unable to allege *any* specific facts about supposed wrongdoing by FS KKR.

***The Complaint Fails to Allege a Colorable Conspiracy Claim Against FS KKR.***  The Complaint fails to offer any specific allegations as to any "agreement" reached by FS KKR with anyone to commit an unlawful act, let alone the manner in which the supposed conspiratorial scheme was carried out.  *See Burnside* v. *Abbott Lab'ys*, 505 A.2d 973, 980 (Pa. Super. Ct. 1985). The Complaint does not identify any meetings, telephone calls, or other communications by any FS KKR employee, officer, or director through which the supposed conspiracy was devised or carried out.  The most the Complaint alleges is that the "Defendants conspired with each other" and others to "perpetrate, facilitate, and perpetuate the breaches of fiduciary duty alleged herein." Compl. ¶ 240.  Such "bald or conclusory allegations" do not supply a colorable claim against FS KKR.  *See Moore v. Johnson & Johnson*, 907 F. Supp. 2d 646, 668 (E.D. Pa. 2012); *Reeser* v. *NGK Metals Corp.*, 247 F. Supp. 2d 626, 630–31 (E.D. Pa. 2003).  Because the Complaint alleges no colorable claim against FS KKR, its citizenship is disregarded in assessing diversity.  The Trustee has not satisfied his burden of proving the absence of alternative grounds for jurisdiction.

## II.    The Trustee Has Not Shown the Action Can Be "Timely Adjudicated."

The Trustee's motion also should be denied on the independent ground that he failed to

prove the Action can be "timely adjudicated" in state court. The Trustee argues only that the Commerce Program of the Court of Common Pleas of Philadelphia County provides a "specialized and expeditious forum," ECF No. 19 ("Mot.") at 6, that "calls for trial within 18 months of filing," Mot. at 7. Those misdirected arguments cannot show that this requirement is met.

Timeliness does *not* turn on how quickly the state court may proceed or "the relative alacrity" of the state and federal forums. *Stoe*, 436 F.3d at 219. In evaluating abstention, courts thus have squarely rejected the very arguments advanced by the Trustee. In *Global Crossing*, for example, the court considered plaintiff's argument that federal courts should abstain in favor of the Chancery Courts of Mississippi in light of its guidance that "general civil cases should be disposed of within 18 months from the filing of the complaint." *In re Glob. Crossing, Ltd. Sec. Litig.*, 311 B.R. 345, 348 (S.D.N.Y. 2003). That "aspirational goal[]" in setting trial dates did not counsel in favor of abstention, because the prospect of parallel state-court litigation posed an unacceptable risk of "interfering with the proceedings pending in the federal courts." *Id.* at 348–49. The court declined to abstain in favor of the state-court proceedings.

Courts in this Circuit thus look to the "1) backlog of the state court's calendar; 2) status of the bankruptcy proceeding; 3) complexity of the issues; and 4) whether the state court proceeding would prolong the administration or liquidation of the estate." *In re Carriage House Condos. L.P.*, 415 B.R. 133, 144 (E.D. Pa. 2009). Those factors, in turn, consider whether proceeding in state court would prolong the litigation "by leading to duplicative motions practice, repetitious discovery, and parallel adjudication of common issues." *Parmalat Cap. Fin. Ltd.* v. *Bank of Am. Corp.*, 639 F.3d 572, 580 (2d Cir. 2011). The circumstances here—in which the Trustee seeks to litigate similar claims in two different fora—powerfully counsel against abstention.

*First*, the proceedings in the Bankruptcy Court are considerably more advanced than the

state-court action, in which nothing has occurred other than the Trustee's filing of the Complaint. *See Carriage House*, 415 B.R. at 145. In contrast, the Bankruptcy Court has overseen EDMC's bankruptcy cases since 2018 and the Adversary Proceeding—in which the Trustee seeks to pursue similar claims—since 2020. The Adversary Proceeding has involved both discovery and dispositive motion practice. Indeed, in that case, the Bankruptcy Court already addressed statute-of-limitations arguments in the Adversary Proceeding that will bar the Complaint.

*Second*, and for similar reasons, the "complexity of the issues" favors adjudication in the Bankruptcy Court. In the Adversary Proceeding, the Trustee intends to prosecute similar "sale-related allegations" before the Bankruptcy Court as in this Action, and the Bankruptcy Court oversaw the Trustee's dilatory efforts to obtain discovery that he alleges in the Complaint excuses his failure to file the Complaint within the limitations period, *see* Compl. ¶¶ 203–22. The Bankruptcy Court has *already addressed* certain of those issues. The Bankruptcy Court's familiarity with those issues, "forged over the past several years, is likely to aid in the prompt and efficient administration of the disputes." *In re Semcrude, LP*, 442 B.R. 258, 274 (Bankr. D. Del. 2010). Nor does the Complaint present unique or novel state-law issues.

*Third*, an unnecessary state court proceeding will prolong the administration of the bankruptcy cases and the liquidation of the debtors' estates. Abstention would lead to duplicative motion practice, discovery, and efforts in both the Bankruptcy Court and state court regarding what the Trustee contends are similar claims. *See Parmalat*, 639 F.3d at 581. Courts routinely decline to abstain where doing so, like here, would multiply proceedings. *See In re Semcrude*, 442 B.R. at 274; *Beightol*, 311 B.R. at 348 ("[T]he pendency of multiple proceedings in multiple

jurisdictions will contribute to slowing down the resolution of [these] claims in any court.").[4]

The Trustee fails to explain why abstention applies when he is pursuing a related case in federal court involving overlapping claims. Even while acknowledging the Adversary Proceeding as a "parallel case," the Trustee's motion mentions it only in a footnote, in which he wrongly asserts that the Adversary Proceeding "is irrelevant to the adjudication of a request for mandatory abstention." Mot. at 8 n.5 (citing *Stoe*, 436 F.3d at 213). *Stoe*, on which the Trustee relies, does not address parallel cases—let alone offer support for the Trustee's position. To the contrary, courts reject abstention where it would inject delay and inefficiency by multiplying proceedings.

The Trustee's argument that abstention is warranted because the Bankruptcy Court cannot conduct a jury trial fares no better. *Cf.* Mot. at 8 n.5. There is nothing uncommon about a bankruptcy court overseeing pre-trial proceedings, even where a district court conducts a trial on jury-trial issues. *See In re Carriage House*, 415 B.R. at 148. Such an outcome is particularly efficient since the Bankruptcy Court already has overseen—and resolved—various pre-trial matters in the Adversary Proceeding. *See Dunn v. Patriarch Partners (In re Zohar III Corp.)*, 20-AP-50534, 2024 WL 1015112, at *3 (D. Del. Mar. 8, 2024) (allowing a bankruptcy court to address pre-trial matters and withdrawing the reference prior to trial promotes "judicial economy and a timely resolution of th[e] case" by allowing court with the greatest "familiarity with the underlying facts and issues" to oversee pre-trial proceedings).

## CONCLUSION

This Court should deny the Trustee's motion for mandatory abstention.

---

[4]  *See also Trs. of Masonic Hall & Asylum Fund v. Pricewaterhousecoopers LLP*, No. 08-CV-10494, 2009 WL 290543, at *4 (S.D.N.Y. Feb. 6, 2009) (declining to abstain where claims presented "but one piece of a much larger, extremely complex litigation puzzle"; *Kirschner v. Grant Thornton LLP (In re Refco, Inc. Sec. Litig.)*, 628 F. Supp. 2d 432, 446 (S.D.N.Y. 2008).

Dated: February 11, 2025

DECHERT LLP

/s/  Michael S. Doluisio
Michael S. Doluisio (PA Bar ID 75060)
Christopher J. Merken (PA Bar ID 329814)
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
Tel:  (215) 994-4000
Fax:  (215) 994-2222
michael.doluisio@dechert.com
christopher.merken@dechert.com

-and-

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**

Andrew G. Gordon*
Brian S. Hermann*
Jeffrey J. Recher*
1285 Avenue of the Americas
New York, NY 10019-6064
Tel:  (212) 373-3543
Fax:  (212) 492-0543
agordon@paulweiss.com
bhermann@paulweiss.com
jrecher@paulweiss.com

* *Pro Hac Vice* application forthcoming

*Attorneys for KKR & Co. Inc., KKR Credit
Advisors (US) LLC, KKR Financial Holdings III,
LLC, KKR Strategic Capital Institutional Fund,
Ltd., KKR-Milton Capital Partners L.P., KKR-
PBPR Capital Partners L.P., KKR Debt Investors
II (2006) (Ireland) L.P., KKR Lending Partners
L.P., FS KKR Capital Corp., 8 Capital Partners
L.P., BCBSM, Inc., Spruce Investors Limited, and
Kermit Cook*

-and-

16

**MORGAN, LEWIS & BOCKIUS LLP**

*/s/  John C. Goodchild*

John C. Goodchild III (PA Bar ID 74856)
Matthew C. Ziegler (PA Bar ID 326334)
2222 Market Street
Philadelphia, PA 19103-3007
Tel:  (215) 963-5000
Fax:  (215) 963-5001
john.goodchild@morganlewis.com
matthew.ziegler@morganlewis.com

*Attorneys for Oregon Public Employees
Retirement Fund*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on February 11, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, and served the same by first-class mail, postage prepaid, to:

      US Income Strategy Fund
      30 Hudson Yards
      Suite 7500
      New York, NY 10001

                By: */s/ Michael S. Doluisio*
                    Michael S. Doluisio